Case 6:23-cv-00004-NKM-JCH    Document 89    Filed 11/14/24    Page 1 of 12
Pageid#: 590

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

11/14/2024

LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | | |
|---|---|---|
| EDWARD I. WHITMORE )   Plaintiff, ) ) v. ) ) KROGER LIMITED PARTNERSHIP I, )   Defendant. ) | Civil Action No. 6:23cv00004  MEMORANDUM OPINION & ORDER  By:   Joel C. Hoppe         United States Magistrate Judge | |

This matter is before the Court on Defendant Kroger Limited Partnership I's motions to quash Plaintiff Edward Whitmore's Rule 45 subpoena "compelling Sedgwick Claims Services ('Sedgwick') to produce its claims file in this matter." Def.'s Am. Mot. 1 (citing Fed. R. Civ. P. 26, 45), ECF No. 83; *accord* Def.'s Mot. 1 (citing Fed. R. Civ. P. 26, 45), ECF No. 82.[1] The motions have been fully briefed, ECF Nos. 82, 83, 84, and argued, ECF No. 87 (Nov. 7, 2024). For the reasons explained below, I will deny Kroger's amended motion, ECF No. 83, and require production of any remaining materials in Sedgwick's claims file that contain nonprivileged fact work-product responsive to Whitmore's second Rule 45 subpoena.[2] Fed. R. Civ. P. 26(b)(3)(A)–(B). Kroger may designate these materials as "confidential" in accordance with the protective order. ECF No. 75. Counsel for the parties are directed to confer if Kroger believes greater protection is required.

I. The Legal Framework

---

[1] Sedgwick did not ask this Court to quash or modify Whitmore's subpoena under Rule 45(d)(3) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 45(d)(3)(A). Accordingly, I consider Kroger's request for relief under Rule 26(c)'s standard for issuing a protective order. Fed. R. Civ. P. 26(c)(1).

[2] Kroger's motion to quash, ECF No. 82 (filed Sept. 30, 2024), seeks the same relief as its amended motion filed the same date, ECF No. 83. The original motion, ECF No. 82, will be denied as moot.

1

"Unless otherwise limited by court order," parties to a federal civil action "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see generally Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188–89 (4th Cir. 2017). "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation . . . by another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). "But those materials may be discovered if 'they are otherwise discoverable under Rule 26(b)(1)' and the party seeking discovery 'shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" *In re Grand Jury 2021 Subpoenas*, 87 F.4th 229, 252 (4th Cir. 2023) (quoting Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii)). "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."[3] Fed. R. Civ. P. 26(b)(3)(B).

Rule 26(b)(1) contemplates that discovery will be "broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). "Generally, the burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules."

---

[3] Put differently, only materials containing fact work-product are discoverable in "limited circumstances" where the requesting "party shows both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 174 (4th Cir. 2019) (internal quotation marks omitted); *see generally Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984–85 (4th Cir. 1992) (noting that opinion work-product is almost "absolutely immune from discovery," whereas the "qualified immunity" given to fact work product "is little more than an anti-freeloader rule designed to prohibit one adverse party from riding to court on the enterprise of the other" (internal quotation marks omitted)). "Fact work product is a transaction of the factual events involved." *In re Grand Jury Subpoena*, 870 F.3d at 316; *see, e.g.*, *Smith v. Scottsdale Ins. Co.*, 40 F. Supp. 3d 704, 721–23 (N.D. W. Va. 2014) (noting that insurer's claim file contained factual reports protected by the work-product doctrine).

2

*United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 411 (D. Md. 2005); *see, e.g.*, Fed. R. Civ. P. 26(b)(5) (the party withholding responsive information by claiming that it is privileged or protected under Rule 26(b)(3) must "expressly make the claim" and describe the nature of the materials withheld "in a manner that . . . will enable other parties to assess the claim"); *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) (the party seeking a Rule 26(c) protective order must show "good cause" why it should issue). District courts have "broad discretion to manage discovery and make discovery rulings." *W.S. v. Daniels*, 258 F. Supp. 3d 640, 643 (D.S.C. 2017 (citing *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) ("We afford substantial discretion to a district court in managing discovery and review discovery rulings only for abuse of that discretion.")).

## II. Background

In December 2022, Whitmore filed a pro se complaint in Rockbridge County Circuit Court alleging that one of Kroger's "employees negligently caused a heavy pallet jack to run into him while he was shopping at a Kroger store, causing him bodily injury." ECF No. 16; *see* ECF No. 1-1. Kroger removed the case to this Court in January 2023. ECF No. 1. In February 2024, Whitmore, now represented by counsel, filed an amended complaint further describing the time, place, occurrences, and people involved in the events giving rise to his negligence claim against Kroger. Am. Compl. ¶¶ 4–8, ECF No. 57. He seeks $500,000 in compensatory damages. *Id.* at 3. Kroger admits some of the historical facts alleged in Whitmore's amended complaint, *see, e.g.*, Answer to Am. Compl. ¶¶ 4–6, 8, 10, 12, but it denies that its employee, Trudy Keefe, "hit [Whitmore's] shopping cart with a pallet full of milk while she was operating a pallet jack," injuring him, Am. Compl. ¶ 6. *See* Answer to Am. Compl. ¶¶ 6–7, 11–12, 15, ECF No. 58. Thus, the central factual issues in this case will be whether the pallet jack made physical contact with

3

the shopping cart and, if so, whether and to what extent that contact caused Whitmore's alleged injuries. *See generally* Pl.'s Br. in Supp. Mot. Default J. 2–4, 6–8, ECF No. 78; Def.'s Br. in Opp'n to Pl.'s Mot. Default J. 12–13, ECF No. 80; Pl.'s Br. in Opp'n to Def.'s Am. Mot. 2–4, ECF No. 84.

      Sedgwick Claims Services is a third-party company that "investigates and administers all accident reports and claims against Kroger." Def.'s Am. Mot. ¶ 2. Sedgwick maintains a file on Whitmore's claim at issue in this lawsuit. *See generally id.* ¶¶ 2–8; *id.* Ex. B, Letter from M. B. Nash, Esq. to J. Whiting, Esq. (Aug. 21, 2024), ECF No. 83-1, at 1. The claim file contains 35 pages. Def.'s Am. Mot. ¶ 6. In August 2024, Kroger's counsel produced 19 pages to Whitmore's attorney with some "redactions relate[d] to attorney-client communications between [her] firm and Sedgwick." *Id.* Ex. B, at 1; *accord* Pl.'s Br. in Opp'n to Def.'s Am. Mot. 3 ("Plaintiff now has nineteen of what appears to be thirty-five pages of claim notes."). Kroger asserts that the other 16 pages contain "information that is otherwise shielded from disclosure under the work-product doctrine and the attorney-client privilege." Def.'s Am. Mot. ¶ 4; *see also id.* ¶¶ 2, 5, 7. At the motion hearing on November 7, 2024, Kroger's counsel clarified that these materials contain internal investigation checklists, information on the applicable statute of limitations, and notes about how Kroger valued Whitmore's claim.[4] Whitmore's attorney clarified that he is most interested in any statements that witnesses or others made about his claim during Sedgwick's pre-suit investigation. *See* Pl.'s Br. in Opp'n to Def.'s Am. Mot. 2, 4–5.

\*

---

[4] The materials that Kroger's counsel produced to Whitmore's attorney in August 2024 contain some of the same information. *See, e.g.*, Def.'s Am. Mot. Ex. B, at 7, 9–10, 15, 19–20. Nonetheless, Kroger does not dispute that Sedgwick's claim file contains other, previously unproduced "documentation pertaining in any way to information/facts gathered, provided, or known by Kroger or Sedgwick from any source including witnesses, employees, customers, or other persons about Whitmore's claim that he was injured by the conduct of a Kroger employee," Def.'s Am. Mot. Ex. A, ECF No. 83-1.

4

In July 2024, Whitmore's attorney sent Sedgwick a Rule 45 subpoena "request[ing] . . . 'any and all emails or other documented or written communications with Kroger about video footage preservation regarding claim number 402124G29D-0001 for Edward Whitmore which occurred at Store 404 in Lexington, Virginia'" on December 17, 2020. *See* Def.'s Am. Mot. Ex. B, at 1. Sedgwick forwarded this subpoena to Kroger's counsel, *see id.*, who in turn produced "certain portions of the Sedgwick claim file" to Whitmore's attorney, Def.'s Am. Mot. ¶ 5. This production contained "nineteen . . . pages of claim notes," Pl.'s Br. in Opp'n to Def.'s Am. Mot. 3, that Kroger's counsel considered relevant to the parties' "ongoing" discovery dispute over "the missing video," *see* Def.'s Am. Mot. ¶¶ 3, 5–6.[5] *See generally* Def.'s Am. Mot. Ex. B, at 1 (production cover letter dated Aug. 21, 2024); *id.* at 3–22 (Sedgwick claim notes dated Dec. 22, 2020 through Jan. 3, 2024). Kroger also asserts that it produced "the video in the claims file" to Whitmore in early 2024. *See* Def.'s Am. Mot. ¶ 8. That video apparently captured a portion of the store's dairy section on the morning of December 17, 2020, roughly twelve hours before Whitmore went shopping that night. *See* Pl.'s Br. in Supp. Mot. Default J. 7; Def.'s Br. in Opp'n Pl.'s Mot. Default J. 10, 12.

The "missing video" at issue in Whitmore's July 2024 subpoena, Def.'s Am. Mot. ¶ 6, relates to a visual recording "of the exact area where the [alleged] incident occurred" in the store's dairy section around 10:00 p.m. on December 17, 2020, Pl.'s Br. in Opp'n to Def.'s Am. Mot. 2. Whitmore suggests that this recording would have shown Ms. Keefe "hitting Whitmore's

---

[5] Whitmore's July 2024 subpoena did not request materials in Sedgwick's claim file that were *unrelated* to this discovery dispute, *see* Fed. R. Civ. P. 37(e), but that may have been "relevant to any party's claim or defense" asserted in the pleadings, Fed. R. Civ. P. 26(b)(1). *See, e.g.*, Def.'s Am. Mot. Ex. B, at 1; Pl.'s Br. in Supp. Mot. Default J. 6–8, 13–14 (discussing Sedgwick's August 2024 production in the context of seeking Rule 37(e) and other sanctions against Kroger), ECF No. 78 (filed Aug. 26, 2024); Pl.'s Reply Br. Mot. Default J. 7 ("Since the filing of the [Rule 37] motion, Plaintiff has issued another [Rule 45 subpoena] for all Sedgwick's claim notes in the Whitmore claim [file]."), ECF No. 81 (Sept. 13, 2024).

cart with a large pallet of milk," which both Kroger and its employees have testified did not happen. Pl.'s Br. in Opp'n to Def.'s Am. Mot. 2 ("From the beginning, Kroger knew that Trudy Keefe admitted to hitting Whitmore's cart with a large palate of milk yet testified in written and oral discovery that no such thing happened."). The parties dispute whether this footage ever existed, *see* Def.'s Am. Mot. ¶ 6, and if so, whether it was lost because Kroger failed to take reasonable steps to preserve it, *see* Pl.'s Br. in Opp'n to Def.'s Am. Mot. 2 (citing Whitmore's motion for Rule 37 sanctions and supporting briefs, ECF Nos. 77, 78, 81). Nonetheless, Kroger concedes that there was a working video camera in the dairy section on December 17, that its employee "inadvertently" saved that day's footage from twelve hours before the alleged incident, and that any footage from the timeframe of the alleged incident on December 17 was automatically written over 30 days later. *See, e.g.*, Def.'s Br. in Opp'n to Pl.'s Mot. Default J. 11–12. That footage is lost and cannot be restored. *See id.*

On August 26, Whitmore filed a motion seeking "at least an adverse inference jury instruction" that the lost video footage "was unfavorable to Kroger." Pl.'s Br. in Supp. Mot. Default J. 13; *see generally id.* at 5–13 (applying Fed. R. Civ. P. 37(e)). That motion also alleges that one of the pages produced from Sedgwick's claim file in August 2024 reveals that Kroger "lied about there being contact between the pallet jack and Whitmore's shopping cart" and that it and/or its employees "completely fabricated" other evidence that would undermine Whitmore's tort "claim if a jury were to believe it." Pl.'s Br. in Supp. Mot. Default J. 14; *see generally id.* at 1, 3–4, 13–21. This page documents a Kroger representative's phone call reporting this alleged incident to Sedgwick at 4:32 p.m. on December 23, 2020. *Id.* Ex. 9, at *34, ECF No. 78-9, at 13; Def.'s Am. Mot. Ex. B, at 20 (copy). Under "Notes/Additional Comments," the Sedgwick employee who documented this report wrote: "Caller said that ee [employee] said that its true

6

that the jack hit the buggy but buggy was no where near the cm [claimant]." *Id.* (formatting in original). Thus, Whitmore maintains that Kroger has been lying about whether the jack made physical contact with his shopping cart. *See generally* Pl.'s Reply in Supp. Mot. Default J. 4–5; Pl.'s Br. in Opp'n to Def.'s Am. Mot. 2–3. Whitmore's motion for sanctions, ECF No. 77, is pending before the presiding District Judge.[6]

\*\*

On September 20, 2024, Whitmore served a second Rule 45 subpoena on Sedgwick. *See* Def.'s Am. Mot. ¶ 1; Pl.'s Br. in Opp'n to Def.'s Am. Mot. 1. This subpoena essentially asked Sedgwick to produce all other materials in its claim file except "written communications with . . . legal counsel." Def.'s Am. Mot. Ex. A, Attah. A to Pl.'s Second R. 45 Subpoena, ECF No. 83-1 ("Attach. A"); *accord* Def.'s Am. Mot. ¶¶ 1, 4, 7 (citing Attach. A); Pl.'s Br. in Opp'n to Def.'s Am. Mot. 1, 3–4 (citing Attach. A); Pl.'s Br. Supp. Mot. Default J. 21 & n.62; Pl.'s Reply Br. Mot. Default J. 7. More specifically, Whitmore now seeks:

> [a]ny and all documentation pertaining in any way to information/facts gathered, provided, or known by Kroger or Sedgwick from any source including witnesses, employees, customers, or other persons about Whitmore's claim that he was injured by the conduct of a Kroger employee. This includes emails or other documented or written communications with anyone other than legal counsel, and any and all claim notes or other written documentation.

Attach. A. On September 30, Kroger moved to quash this subpoena under Rule 26 and/or Rule 45. *See* ECF Nos. 82, 83. In its amended motion, Kroger asserts that the "remaining information" in Sedgwick's claim file, Def.'s Am. Mot. ¶ 7, is "shielded from disclosure under the work-product doctrine and the attorney-client privilege," *id.* ¶ 4. *See also id.* ¶¶ 2, 5.

---

[6] Nothing in this Memorandum Opinion & Order should be construed as a ruling on any issue presented in that motion, ECF No. 77.

Whitmore responded that he is not asking Sedgwick to produce any *opinion* attorney-work product or attorney-client privileged communications. *See* Pl.'s Br. in Opp'n to Def.'s Am. Mot. 3–4 (citing Fed. R. Civ. P. 26(b)(3)). He does not dispute that his subpoena clearly seeks *fact* work-product from Sedgwick's claim file. *See id*. (noting that this subpoena "seeks facts" Kroger or Sedgwick gathered or learned when investigating his claim, and not counsel's "impressions or opinions").[7] Rather, Whitmore asserts that those "items are discoverable under Rule 26, and [that he] has a substantial need for materials pertaining to evidence discovered by Kroger or [by] . . . Sedgwick, since only they had access to such evidence almost four years ago." *Id.* at 3–4. Whitmore asserts that he "has no other way of obtaining such material evidence. The time-sensitive investigation into this incident was done almost four years ago by Kroger and Sedgwick." *Id.* at 3. Kroger's admitted failure to preserve the correct "video of the exact area where the incident occurred" makes his discovery request all the more appropriate. *See id.* at 2.

### III. Discussion

Kroger has shown that its representative, Sedgwick, prepared the remaining claim notes "because of the prospect of litigation," when its insured faced "an actual claim or potential claim

---

[7] Near the end of the motion hearing on November 7, Whitmore's attorney argued for the first time, without citing any authority to support his argument, that Kroger had not made the threshold showing that Sedgwick's remaining claim notes were prepared by Sedgwick "in anticipation of litigation," Fed. R. Civ. P. 26(b)(3)(A), as opposed to "in the ordinary course" of investigating a potential insurance claim against its insured, *see Nat'l Union Fire Ins. Co.*, 967 F.2d at 984. Kroger's motion asserted, "Sedgwick is the third-party claims administrator for Kroger and as such, investigates and administers all accident reports and claims against Kroger." Def.'s Am. Mot. ¶ 2. In his brief in opposition, Whitmore did not challenge Kroger's factual assertion that Sedgwick investigated claims for Kroger or otherwise put Kroger on notice of his argument that Sedgwick's work for Kroger was not in anticipation of litigation. "As a general matter, [courts] do not consider issues raised for the first time at oral argument." *United States v. Legins*, 34 F.4th 304, 319 n.18 (4th Cir. 2022); *N. Car. Alliance for Transp. Reform, Inc. v. U.S. Dep't of Transp.*, 713 F. Supp. 2d 491, 510 (M.D.N.C. 2010) (noting that raising "new arguments for the first at oral argument undermines the purpose of orderly briefing and risks subjecting an opponent to an unfair disadvantage"). Accordingly, I decline to consider Whitmore's new argument now. *See Synovus Bank v. Stevens Law Firm*, No. 4:19cv1411, 2020 WL 12788154, at *2 n.3 (D.S.C. July 20, 2020) (declining to consider argument raised for the first time at a motion hearing).

following an actual event or series of events that reasonably could result in litigation," *Nat'l Union Fire Ins. Co.*, 967 F.2d at 984 (emphasis omitted). *See, e.g.*, Def.'s Am. Mot. ¶¶ 1–2, 4 ,7–8; *id.* Ex. B, at 6 (brief summary of "pre-suit investigation" with some text redacted). This alone constitutes "good cause" to issue a Rule 26(c) protective order quashing Whitmore's second Rule 45 subpoena to Sedgwick. *Cf. Doe v. Mast*, No. 3:22cv49, 2024 WL 4353070, at *17–18 (W.D. Va. Sept. 30, 2024) (granting defendant's motion for Rule 26(c) protective order against plaintiffs' Rule 45 subpoena that sought emails containing fact work-product where plaintiffs did not argue that they had a substantial need for these materials under Rule 26(b)(3)(A)). The burden now shifts to Whitmore to show that the claim notes are relevant to any party's claim or defense and proportional to the needs of the case considering the Rule 26(b)(1) factors; that he has a "substantial need for the materials to prepare [his] case"; and that he "cannot, without undue hardship, obtain their substantial equivalent by other means." *See* Fed. R. Civ. P. 26(b)(1), (b)(3)(A)(i)–(ii).

Whitmore has made this showing. First, the fact work-product contained in the remaining claim notes is clearly relevant to both Whitmore's negligence claim, Am. Compl. ¶¶ 4–14, and Kroger's asserted defenses thereto, Answer to Am. Compl. ¶¶ 4–16. *See* Fed. R. Civ. P. 26(b)(1). Requiring Sedgwick to produce those 16 pages is also proportional to the needs of this case considering their importance to resolving disputed factual issues and the parties' relative access to what may be the best available information to establish what did, or did not, happen when Trudy Keefe encountered Whitmore in the store's dairy section on the night of December 17, 2020. *See id.*; *cf. Sines v. Kessler*, No. 3:17cv72, 2020 WL 3428988, at *1 (W.D. Va. June 23, 2020) ("The 'basic philosophy' driving discovery today is that 'prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person,

unless the information is privileged.'" (quoting 8 Wright & Miller, *Federal Practice & Procedure* § 2001 (3d ed. 2002))).

Second, Whitmore has shown a substantial need for the remaining claim notes to prepare his case. In his response and at the motion hearing, Whitmore pointed out that Sedgwick would have documented individuals' contemporaneous statements while investigating his claim shortly after the incident occurred on December 17, 2020, which was almost four years ago. *See* Pl.'s Br. in Opp'n to Def.'s Am. Mot. 3–4. Whitmore, on the other hand, could not serve any discovery requests until after he filed this lawsuit in December 2022. The Fourth Circuit has recognized that contemporaneous witness statements are "unique catalysts in the search for truth in the judicial process." *Nat'l Union Fire Ins. Co.*, 967 F.2d at 985 (quotation marks omitted). "Memory inevitably fades and with it the accuracy of witness statements. Accounts rendered from fresh recollections are universally held to be more reliable that those given after time has passed." *Galloway v. Sunbelt Rentals, Inc.*, No. 5:14cv40, 2015 WL 176615, at *3 (W.D. Va. Jan. 14, 2015) (internal citations omitted). "For that reason, courts have widely found good cause to compel the disclosure of a witness statement made at [or near] the time of the accident," especially when "the party seeking the statement did not have an opportunity to question the witness until weeks or months later." *Bowling v. Appalachian Elec. Supply, Inc.*, No. 3:13cv27347, 2014 WL 1404572, at *6 (S.D. W. Va. Apr. 10, 2014) (citing *McDougall v. Dunn*, 468 F.2d 468, 474 (4th Cir. 1972)).

Ms. Keefe and the other Kroger employees connected to the underlying events are key witnesses in this matter. "Accurate recordings of their recollections are of paramount importance to [Whitmore's] ability to prepare his case." *Galloway*, 2015 WL 176615, at *4. Moreover, Whitmore's second Rule 45 subpoena "does not present a situation where one party seeks to

10

build his case on the back of his opponent's strategy, theories, and impressions." *Id.* at *5 (citing *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). "It involves equal access to important factual information" recorded at or near the time of the incident, which is currently in only one party's hands. *See id.* Accordingly, Whitmore has shown a substantial need for the requested materials. *See id.*

Finally, Whitmore cannot obtain the substantial equivalent of the Kroger employees' contemporaneous statements without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii). Kroger does not suggest that deposing these individuals more than three years after the incident would be an acceptable substitute. *See* Def.'s Am. Mot. ¶ 7; *cf. Galloway*, 2015 WL 176615, at *4 ("A deposition based on two-year-old memories is not the substantial equivalent of a witness statement taken a week after the incident, especially when Galloway was physically incapable of initiating his own contemporaneous investigations due to his injuries."). Any video footage of the dairy aisle from the correct timeframe on December 17, 2020, is lost and cannot be restored. *See* Pl.'s Br. in Opp'n to Def.'s Am. Mot. 2–3; Def.'s Br. in Opp'n to Pl.'s Mot. Default J. 12. I take no position on what this footage might have shown or whether it was lost because Kroger failed to take reasonable steps to preserve it. Nonetheless, the fact remains that there is no visual recording to corroborate—or to contradict—the parties' "drastically conflicting accounts" of what happened when Ms. Keefe encountered Whitmore in the dairy aisle that night. *See* Def.'s Br. in Opp'n to Pl.'s Mot. Default J. 12. The Kroger employees' contemporaneous statements given during Sedgwick's investigation may be important information to aid in this lawsuit's search for the truth. *See Galloway*, 2015 WL 176615, at *5 (citing *McDougall*, 468 F.2d at 473–74). Whitmore has shown that this is one of those "limited circumstances" where he can discover his opponent's fact work-product.

11

IV. Conclusion

For the foregoing reasons, Defendant's Amended Motion to Quash, ECF No. 83, is hereby **DENIED**. Defendant's Motion to Quash, ECF No. 82, is denied as moot. Each party shall bear its own expenses. Fed. R. Civ. P. 26(c)(3).

Counsel for Kroger hereby is **DIRECTED** to produce Sedgwick's remaining claim notes to Plaintiff's attorney within **ten (10) days** from the date of his Order. Kroger may redact from those materials any attorney-client communications or opinion work-product, which are outside the scope of the Rule 45 subpoena at issue, and provide a privilege log. Kroger may designate any materials as "confidential" in accordance with the protective order. ECF No. 75. Counsel for the parties are directed to confer if Kroger believes greater protection is required. *See* Fed. R. Civ. P. 26(c)(2).

It is so ORDERED.

ENTERED: November 14, 2024

Joel C. Hoppe
United States Magistrate Judge